**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **CALLOWAY CLEANING &** | : | |
| **RESTORATION INC.,** | : | Case No.: _____ |
| 11316 Tamarco Drive | : | |
| Cincinnati, OH 45242, | : | Judge: _____ |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **VERIFIED COMPLAINT** |
| | : | |
| **ROBERT T. BURER,** | : | **(Jury Trial Demanded)** |
| 5501 Winton Road, | : | |
| Fairfield, OH 45014 | : | |
| | : | |
| **and** | : | |
| | : | |
| **1 CALL AWAY RESTORATION LLC** | : | |
| c/o Registered Agent, Jeffrey Kenney | : | |
| 305 West Nationwide Boulevard | : | |
| Columbus, OH 43215 | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

_____

For its Complaint (the "Complaint") against Defendants Robert T. Burer ("Burer") and 1 Call Away Restoration LLC ("1 Call Away" and, with Burer, the "Defendants"), Plaintiff Calloway Cleaning & Restoration Inc. ("Calloway") states:

### Introduction

1.     This is an action for violations of the Ohio Deceptive Trade Practice Act and the Federal Lanham Act, tortious interference, conversion, defamation, breach of fiduciary duty, misappropriation of trade secrets, and civil conspiracy against one of Calloway's former employees, Burer, and the company he formed, 1 Call Away, to misappropriate Calloway's hard-earned business reputation, goodwill, and customer business.

1

2.      Calloway is a decade-old cleaning and restoration company in the Cincinnati area. It was founded by the late James Calloway and run, for years, by James and his wife, Michele. Since James' untimely passing in July 2019, Michele has run the company on her own.  Over the years, Calloway established a strong reputation and valuable brand name for its cleaning and restoration work and has a federally registered trademark in the word-mark, "Calloway Clean * Restore * Remodel – Help is just a call-o-way" (USPTO Registration No. 5817375).



3.      After quitting his position at Calloway in August 2021, Burer continued to answer incoming calls to Calloway's emergency line and via Calloway's website that were routed to his cell phone from actual and prospective customers.  Burer misrepresented himself as Calloway and proceeded to interfere with at least $15,000 of booked and in-progress jobs from Calloway by performing jobs (using equipment he stole from Calloway) for customers that believed they were contracting with Calloway or referring customers to competitors because Burer lacked the requisite equipment to perform the work himself.

4.      Then, once Calloway reconfigured its phone system, Burer started a competing business.  However, instead of honestly and independently building his new company's reputation, Burer again sought to unlawfully trade on Calloway's reputation and good name, and leech business from Calloway's customers.  He did so, in part, by calling his new business "1 Call Away Restoration," thus trying to confuse potential customers and Calloway's actual customers, who know Calloway's "Help is just a call-o-way" trademark.



5.      Further, to perform their work, Burer and 1 Call Away have, upon information and belief, been using at least $12,000 (and possibly over $50,000) of equipment that Burer stole from Calloway.

6.      In addition, 1 Call Away's website, which 1 Call Away uses to advertise its services to actual and potential customers, is replete with images and videos of *Calloway's* work for *Calloway's* customers as performed by *Calloway's* employees.

7.      In other words, Burer and 1 Call Away have used equipment stolen from Calloway to unlawfully compete with Calloway, and images and videos of Calloway's employees and work product to advertise 1 Call Away's services—all in violation of federal and state law.

8.      Finally, Burer and 1 Call Away have falsely disparaged Calloway to Calloway's customers and potential customers.

9.      These actions have misled and confused Calloway's customers, causing irreparable harm to Calloway along with monetary damages.

10.     Calloway is now forced to file this suit to prevent Burer and 1 Call Away from continuing to irreparably harm Calloway's hard-earned brand, goodwill, and business reputation.

**The Parties**

11.     Plaintiff Calloway is a Delaware corporation that maintains its principal place of business at 11316 Tamaco Drive, Cincinnati, Ohio 45242.

12.     Upon information and belief, Defendant Burer resides at 5501 Winton Road, Fairfield, Ohio 45014.

13. Upon information and belief, Defendant 1 Call Away is an Ohio limited liability company that is registered to receive service of process through its agent, Jeffrey Kenney, at 305 West Nationwide Boulevard, Columbus, Ohio 43215.

### Jurisdiction and Venue

14. This Court has original jurisdiction over this action under 28 U.S.C. §1331, because Calloway brings claims against Defendants under, among other things, the federal Lanham Act, 15 U.S.C. § 1121.  The "district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."  15 U.S.C. § 1121(a).

15. This Court has personal jurisdiction over Burer because, among other things, he resides in this district and committed intentional tortious acts against an Ohio company that were likely, if not certain, to injure persons in Ohio.

16. This Court has personal jurisdiction over 1 Call Away because, among other things, it is an Ohio limited liability company and it committed intentional tortious acts against an Ohio company that were likely, if not certain, to injure persons in Ohio.

17. Venue is proper in this Court with respect to Defendants under 28 U.S.C. § 1391(b) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to Calloway's claim occurred in this judicial district.

### The Facts

A. *The Nature of Calloway's business.*

18. Calloway was started by the late James Calloway in 2009.  Since James' passing, the company has been run by his widow, Michele R. Calloway.

4

19.     Calloway provides cleaning and restoration services.  Calloway offers five types of cleaning (carpet cleaning, air duct/vent cleaning, furniture cleaning, tile/grout cleaning, and odor removal) and five types of restoration (water/flood damage, fire/smoke damage, mold remediation, biohazard/crime scene/trauma cleanup, and wind/storm damage).

20.     Calloway offers 24/7 services in the greater Cincinnati and Dayton areas, across Ohio, Kentucky, and Indiana.  Before James' death, the company also offered emergency services in Texas to help victims recover from Hurricane Harvey.

B.     *Burer begins working with Calloway; gouges the company; and causes turmoil.*

21.     After James' death, Burer, who was Michele's ex-husband, began to work his way back into Michele's life and, over time, into the Calloway company.

22.     From September 2020 until January 2021, Burer volunteered his time to Calloway while he was formally employed by a different company, TB Properties LLC.  Burer became a full-time Calloway employee in January 2021 and was paid $2,000 per week.

23.     Once he became a full-time employee, Burer functioned as Calloway's general manager.  In this capacity, he took incoming calls, dispatched work teams, and managed Calloway's personnel.

24.     Upon information and belief, Burer has an interest in Burer's Garage Inc., a vehicle repair shop located in Fairfield, Ohio.  Burer steered repair work for Calloway vehicles to Burer Garage, which inflated the prices for repair work and gouged Calloway.

25.     Burer referred to Calloway as "his company" and checks sent by customers to the company as "his checks."

26.     Burer's abrasive personality and management decisions caused chaos at Calloway. Calloway had 20 full-time employees when Burer became its general manager but employees resigned in droves due to Burer's management and behavior.

27.     The situation reached a boiling point in August 2021 when Calloway's last work crew quit because of Burer's behavior.

C.      *Burer abruptly resigns from employment at Calloway; steals thousands of dollars of Calloway's equipment and gift cards; and continues to take customer calls and misappropriates existing and new business away from Calloway to himself.*

28.     In response to the staffing shortages created by Burer's behavior, Michele raised the issues with Burer.  At this act, Burer suddenly announced that he was quitting, filled up a Calloway work van with nearly $12,000 worth of company equipment, and drove off.

29.     Burer also pocketed $3,000 in company-owned gift cards to the Stone Creek Dining Company restaurant in Montgomery, Ohio when he left Calloway.

30.     Unbeknownst to Calloway at the time, Burer's personal cell phone received incoming calls rerouted from Calloway's website as well as incoming calls to Calloway's emergency number.  For at least three weeks—from late August until September 15, 2021, Burer fielded calls from potential and actual Calloway customers, falsely held himself out as a Calloway representative and/or owner, and either accepted work on Calloway's behalf but then performed it himself, using equipment stolen from Calloway, and without ever providing compensation to Calloway; or turned down work for which *he* did not have stolen equipment, but which Calloway could have done, and falsely claimed *Calloway* was unable to do that work and/or leaving that line of business.  For some work that Burer turned down, including mold remediation and carpet restoration, he directed at least three customers to call Calloway's direct competitors, like Teasdale Fenton, and indicated, falsely, that Calloway was moving away from that type of work.

6

31.     Burer actively fielded calls directed to Calloway by Calloway's actual and prospective customers, and falsely told at least one customer that Burer was "handling all of [Calloway's] business now," that he was "in charge of [Calloway]," and that he was "one of the owners" of Calloway.  He also introduced himself to at least one potential customer as "Mr. Calloway," a particularly callous act given the real James Calloway's death two years ago.

32.     In the same calls, he told at least one customer that Calloway "do[es]n't know what they're doing."  He then directed at least three customers or potential customers to make follow-up calls to his personal phone number rather than to the Calloway number, thus further cutting out Calloway from any communications and work.

33.     Further, when Burer was unable to perform a job for one customer and the customer's grandson complained, Burer directed the customer's complaint to Michele at Calloway. He told the customer Calloway's workers were "terrible employees" and "really inexperienced."

34.     Burer's misrepresentations have continued to create headaches for Calloway.  In one example, Burer answered a potential customer call in September 2021 purporting to be a Calloway representative.  Burer told the customer that Calloway did not have the capacity to perform the job (which it did) and directed the customer to a competitor.  Later, after discovering that Burer had received the potential customer's inquiry and without knowledge that Burer had directed the potential customer to a competitor, Calloway called the potential customer, who mistakenly believed that Calloway had performed the work (which was unsatisfactory).  Assuming Burer had incorrectly performed the job, Calloway sent a work crew to remediate the property. The customer later received bills from Calloway and the competitor, creating confusion and prompting Calloway to return payment received from the customer.

D.     *After Calloway catches and corrects Burer's misappropriation of incoming phone calls, Burer forms 1 Call Away to trade on Calloway's brand and trademarks; steals Calloway's*

7

_images and videos to promote 1 Call Away; disparages Calloway; tortiously interferes with Calloway's contractual relationships with its customers; and harasses Calloway's owner._

35. On September 15, 2021, Calloway realized why it seemingly was not receiving any emergency customer calls and corrected its phone systems so that the company could start fielding calls again.

36. Undeterred in his efforts to steal Calloway's customers and trade on Calloway's reputation, upon information and belief, Burer formed 1 Call Away on September 30, 2021.

37. Burer's new company's name—"1 Call Away"—copied Calloway's registered design and work mark—"Help is just a call-o-way."

 

38. Upon information and belief, Burer purchased and operates www.1callawayrestortation.com for 1 Call Away. 1 Call Away's website and Instagram account are replete with images and videos featuring _Calloway's_ employees and work product. Thus, Burer and 1 Call Away have used Calloway source material for 1 Call Away to compete against Calloway.

39. Upon further information and belief, Burer may have taken an additional $40,000 of Calloway's equipment, which Calloway cannot locate from its equipment inventory list, and is using that equipment at 1 Call Away to unfairly compete against Calloway.

40. Upon further information and belief, Burer and 1 Call Away contacted Calloway's three largest customers (whose combined business is worth $500,000 annually to Calloway, and about whom Burer only knew due to his work for Calloway), disparaged Calloway to each of those

customers, and solicited the customers' business for 1 Call Away instead. Burer and 1 Call Away also publicly and falsely disparaged Calloway's work through multiple Facebook posts.

41.  Finally, while orchestrating the aforementioned corporate deception, Burer has also personally harassed Calloway's owner, Michele, and until recently had been approaching her at all hours.

### COUNT ONE: DECEPTIVE TRADE PRACTICES – O.R.C. § 4165.01 et. seq. (INJUNCTION)
#### (Asserted against All Defendants)

42.  Calloway restates and realleges all preceding paragraphs of this Complaint.

43.  Chapter 4165 of the Ohio Revised Code provides for injunctive relief when a defendant engages in a deceptive trade practice. O.R.C. § 4165.03.

44.  A deceptive trade practice includes, but is not limited to:

   a.  passing off goods or services as those of another;

   b.  causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

   c.  causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

   d.  using deceptive representations or designations of geographic origin in connection with goods or services;

   e.  representing that goods or services have sponsorship, approval, or characteristics that they do not have; or

   f.  Representing that goods or services are of a particular standard, quality, or grade. O.R.C. § 4165.02.

45.     Despite the termination of Burer's employment and association with Calloway in August 2021, Defendants have knowingly continued to hold themselves out as being associated with Calloway.  By, among other things, (i) redirecting and answering Calloway's actual and potential customers' phone calls and claiming Burer was still associated with Calloway; (ii) using equipment stolen from Calloway to complete Calloway's booked and work in progress jobs for customers who called Calloway and believed they were still contracting with Calloway; (iii) forming a competing business called "1 Call Away," which borrows from Calloway's registered design and word trademark; (iv) misappropriating images and videos featuring Calloway's employees and Calloway's work for 1 Call Away's website; (v) misappropriating Calloway's customer lists and other confidential and proprietary information and Calloway trade secrets; and (vi) repeatedly and falsely disparaging Calloway and its work to Calloway's actual and potential customers, Defendants have committed one or more deceptive trade practices.

46.     Defendants' deceptive trade practices have directly and proximately misled and confused Calloway's customers and other third-parties.

47.     As a direct and proximate result of Defendants' deceptive trade practices, Calloway has been irreparably harmed.  This damage has included, but is not limited to, loss of good will with customers and damage to Calloway's reputation.  Without injunctive relief, there exists an ongoing threat that Defendants will continue to irreparably harm Calloway.

48.     Calloway is entitled to immediate and permanent injunctive relief under O.R.C. § 4165.03 prohibiting Defendants from engaging in deceptive trade practices, including but not limited to (i) in any way holding themselves out to the public as being associated with Calloway; (ii) using equipment stolen from Calloway to complete Calloway's booked and work in progress jobs for customers who called Calloway and believed they were still contracting with Calloway;

(iii) operating 1 Call Away, which borrows from Calloway's registered design and word trademark; (iv) misappropriating images and videos featuring Calloway's employees and Calloway's work for 1 Call Away's website; (v) misappropriating Calloway's customer lists and other confidential and proprietary information and Calloway trade secrets; and (vi) repeatedly and falsely disparaging Calloway and its work to Calloway's actual and potential customers.

### COUNT TWO: DECEPTIVE TRADE PRACTICES – O.R.C. § 4165.01 et. seq. (DAMAGES)
**(Asserted against All Defendants)**

49.     Calloway restates and realleges all preceding paragraphs of this Complaint.

50.     Chapter 4165 of the Ohio Revised Code provides for monetary and other relief when a defendant engages in a deceptive trade practice.  O.R.C. § 4165.03.

51.     A deceptive trade practice includes, but is not limited to:

a.      passing off goods or services as those of another;

b.      causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

c.      causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

d.      using deceptive representations or designations of geographic origin in connection with goods or services;

e.      representing that goods or services have sponsorship, approval, or characteristics that they do not have; or

f.      Representing that goods or services are of a particular standard, quality, or grade.  O.R.C. § 4165.02.

52.     Despite the termination of Burer's employment and association with Calloway in August of 2021, Defendants have knowingly continued to hold themselves out as being associated with Calloway.  By, among other things, (i) redirecting and answering Calloway's actual and potential customers' phone calls and claiming Burer was still associated with Calloway; (ii) using equipment stolen from Calloway to complete Calloway's booked and work in progress jobs for customers who called Calloway and believed they were still contracting with Calloway; (iii) forming a competing business called "1 Call Away," which borrows from Calloway's registered design and word trademark; (iv) misappropriating images and videos featuring Calloway's employees and Calloway's work for 1 Call Away's website; (v) misappropriating Calloway's customer lists and other confidential and proprietary information and Calloway trade secrets; and (vi) repeatedly and falsely disparaging Calloway and its work to Calloway's actual and potential customers, Defendants have committed one or more deceptive trade practices.

53.     As a direct and proximate result of Defendants' deceptive trade practices, Calloway has suffered and will suffer past and future damages in an amount to be determined at trial.

**COUNT THREE: LANHAM ACT VIOLATIONS – 15 U.S.C. § 1125 et. seq.**
**(INJUNCTION)**
**(Asserted against All Defendants)**

54.     Calloway restates and realleges all preceding paragraphs of this Complaint.

55.     The Lanham Act provides for injunctive relief when a defendant uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which:

a.     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person,

12

or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person; or

b. in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(A)&(B).

56. The Lanham Act further provides for injunctive relief to an owner of a famous mark that is distinctive when a person other than that owner commences to use that mark in commerce that is likely to cause dilution by blurring or by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. 15 U.S.C. § 1125(c)(1).

57. Defendants have committed one or more violations of the Lanham Act by, among other things, (i) redirecting and answering Calloway's actual and potential customers' phone calls and claiming Burer was still associated with Calloway; (ii) using equipment stolen from Calloway to complete Calloway's booked and work in progress jobs for customers who called Calloway and believed they were still contracting with Calloway; (iii) forming a competing business called "1 Call Away," which borrows from Calloway's registered design and word trademark; (iv) misappropriating images and videos featuring Calloway's employees and Calloway's work for 1 Call Away's website; (v) misappropriating Calloway's customer lists and other confidential and proprietary information and Calloway trade secrets; and (vi) repeatedly and falsely disparaging Calloway and its work to Calloway's actual and potential customers.

58. Defendants' violations of the Lanham Act have directly and proximately misled and confused Calloway customers and potential customers.

13

59.     As a direct and proximate result of Defendants' violations of the Lanham Act, Calloway has been irreparably harmed.  This damage has included, but is not limited to, loss of good will with customers and damage to Calloway's reputation.  Without injunctive relief, their exists an ongoing threat that Defendants will continue to irreparably harm Calloway.

60.     Calloway is entitled to immediate and permanent injunctive relief under 15 U.S.C. § 1125 prohibiting Defendants from engaging in further violations of the Lanham Act, including but not limited to (i) in any way holding themselves out to the public as being associated with Calloway; (ii) using equipment stolen from Calloway to complete Calloway's booked and work in progress jobs for customers who called Calloway and believed they were still contracting with Calloway; (iii) operating 1 Call Away, which borrows from Calloway's registered design and word trademark; (iv) misappropriating images and videos featuring Calloway's employees and Calloway's work for 1 Call Away's website; (v) misappropriating Calloway's customer lists and other confidential and proprietary information and Calloway trade secrets; and (vi) repeatedly and falsely disparaging Calloway and its work to Calloway's actual and potential customers.

## COUNT FOUR: LANHAM ACT VIOLATIONS – 15 U.S.C. § 1125 et. seq. (DAMAGES)
### (Asserted against All Defendants)

61.     Calloway restates and realleges all preceding paragraphs of this Complaint.

62.     The Lanham Act provides for monetary relief when a defendant uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which:

      a.  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person,

14

or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person; or

b. in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(A)&(B).

63. The Lanham Act further provides for monetary relief to an owner of a famous mark that is distinctive when a person other than that owner commences to use that mark in commerce that is likely to cause dilution by blurring or by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. 15 U.S.C. § 1125(c)(1).

64. Defendants have committed one or more violations of the Lanham Act by, among other things, (i) redirecting and answering Calloway's actual and potential customers' phone calls and claiming Burer was still associated with Calloway; (ii) using equipment stolen from Calloway to complete Calloway's booked and work in progress jobs for customers who called Calloway and believed they were still contracting with Calloway; (iii) forming a competing business called "1 Call Away," which borrows from Calloway's registered design and word trademark; (iv) misappropriating images and videos featuring Calloway's employees and Calloway's work for 1 Call Away's website; (v) misappropriating Calloway's customer lists and other confidential and proprietary information and Calloway trade secrets; and (vi) repeatedly and falsely disparaging Calloway and its work to Calloway's actual and potential customers.

65. Defendants' violations of the Lanham Act have directly and proximately misled and confused Calloway customers and potential customers.

66.     As a direct and proximate result of Defendants' violations of the Lanham Act, Calloway has suffered and will suffer past and future damages in an amount to be determined at trial.

### COUNT FIVE: TORTIOUS INTERFERENCE (DAMAGES)
**(Asserted against All Defendants)**

67.     Calloway restates and realleges all preceding paragraphs of this Complaint.

68.     Calloway had a contractual and business relationship with various customers on significant and extensive projects.

69.     Burer, who formed and operates 1 Call Away, was aware of these contractual and business relationships, long before forming 1 Call Away in September of 2021.   Burer's knowledge of these contractual and business relationships necessarily extends to 1 Call Away.

70.     1 Call Away remains aware of these contractual and business relationships, as well as the ongoing interference with these relationships by Burer through his false communications to the customers but has done nothing to prohibit the same.

71.     Despite this knowledge, acting through its principal, majority owner, and/or its other agents and employees, 1 Call Away purposefully and intentionally interfered and continues to interfere with Calloway's contractual and business relationships with Calloway's customers by engaging in or assisting (i) using equipment stolen from Calloway to complete Calloway's booked and work in progress jobs for customers who called Calloway and believed they were still contracting with Calloway, and misappropriating that equipment for 1 Call Away's other work; (ii) forming a competing business called "1 Call Away," which borrows from Calloway's registered design and word trademark; (iii) misappropriating images and videos featuring Calloway's employees and Calloway's work for 1 Call Away's website; (iv) repeatedly and falsely disparaging Calloway and its work to Calloway's actual and potential customers; (v)

misappropriating Calloway's customer lists and other confidential and proprietary information and Calloway trade secrets; and (vi) attempting to redirect and redirecting Calloway customers to conduct business with 1 Call Away. 1 Call Away took all these acts despite knowing that Calloway had longstanding business and contractual relationships with its customers.

72.     1 Call Away has tortiously, willfully, and maliciously ignored and interfered with the business and contractual relationships that Calloway's customers have with Calloway, without any justification, excuse, or privilege.

73.     As a direct and proximate result of Defendants' tortious interference, Calloway has suffered and will suffer past and future damages in an amount to be determined at trial.

## COUNT SIX: CONVERSION (DAMAGES)
### (Asserted against All Defendants)

74.     Calloway restates and realleges all preceding paragraphs of this Complaint.

75.     Calloway purchased and rightfully owns approximately $54,899 of cleaning and restoration equipment and $3,000 in gift cards to Stone Creek Dining Company, which Burer took with him when he abruptly resigned from the company in August 2021.

76.     Defendants have wrongfully retained, without authorization, justification, or permission, the equipment and gift cards that belong to Calloway.

77.     Defendants have, instead, exercise dominion and control over the equipment and gift cards.

78.     Calloway demanded return of the equipment and gift cards after Defendants exercised dominion and control over the equipment and gift cards, but Defendants refused to deliver or return the equipment and gift cards to Calloway.  Defendants thereby converted the equipment and gift cards.

79.     As a direct and proximate result of Defendants' actions, Calloway has suffered and will suffer past and future damages in an amount to be determined at trial, but in excess of $57,899.

80.     Calloway is also entitled to punitive damages since Defendants' conversion of Calloway's property was done with malice or wanton disregard of the legal rights of others.

**COUNT SEVEN: DEFAMATION (DAMAGES)**
**(Asserted against All Defendants)**

81.     Calloway restates and realleges all preceding paragraphs of this Complaint.

82.     On multiple occasions, Burer and 1 Call Away have contacted Calloway's largest customers and have disparaged Calloway to those customers.

83.     In addition, on November 10, Burer, acting on behalf of 1 Call Away, published a false Facebook post stating: "1 Call Away Restoration , I'm getting an influx of DISSATISFIED calloway cleaning and restoration customers and others , I am finishing their jobs as a courtesy , if you are experiencing this same thing please call me I will finish your jobs for you , PLEASE call me at 513-520-9924[.]"

84.     All these statements are false.

85.     Burer and 1 Call Away acted with actual malice when they made the above-described statements.

86.     The above-described statements had the tendency and effect to injure Calloway in its business.  They were made to unfairly dupe and steal customers away from and hurt Calloway.

87.     Calloway has suffered damages because multiple customers have, because of these false statements.  As a direct and proximate result of Defendants' actions, Calloway has suffered and will suffer past and future damages in an amount to be determined at trial.

88.     Calloway is also entitled to punitive damages since Defendants' defamation was done with malice or wanton disregard of the legal rights of others

## COUNT EIGHT: BREACH OF FIDUCIARY DUTY (DAMAGES)
### (Asserted against Burer)

89.     Calloway restates and realleges all preceding paragraphs of this Complaint.

90.     As an at-will employee of Calloway, Burer owed to Calloway fiduciary duties of and duties of utmost loyalty and good faith.

91.     Burer's conduct as set forth in detail above constitutes a breach of his fiduciary duties and duties of utmost loyalty and good faith to Calloway by, among other things, causing Calloway to spend more on vehicle repair than was necessary by directing Calloway to have its vehicles repaired for approximately $24,000 at Burer's Garage, a repair shop in which Burer has a financial interest, and which charged Calloway more than was necessary for repair work.

92.     As a direct and proximate result of Burer's breach of fiduciary duty, Calloway has suffered damages in an amount to be determined at trial, but believed to be in excess of $16,000.

93.     Burer's misconduct also qualifies him as a faithless servant of Calloway.

94.     As Burer is a faithless servant of Calloway, Calloway is entitled to disgorgement from Burer of all compensation and/or revenue that Burer received from Calloway during his period of disloyalty.

## COUNT NINE: MISAPPROPRIATION OF CONFIDENTIAL, TRADE SECRET, AND PROPRIETARY INFORMATION – O.R.C. § 1333.61, et. seq. and 18 U.S.C. § 1836, et seq. (INJUNCTION)
### (Asserted against All Defendants)

95.     Calloway restates and realleges all preceding paragraphs of this Complaint.

96.     Chapter 1333.62 of the Ohio Revised Code and 18 U.S.C. § 1836 provide for injunctive relief when a defendant engages in misappropriation.  O.R.C. § 1333.62; 18 U.S.C. § 1836(b)(3)(A).

97. Information that Burer obtained during his employment relationship with Calloway—which includes, but is not limited to, Calloway's customer database, pricing structure, and financial information that it used to quote projects to customers and to target actual repeat and potential customers—constitutes confidential and proprietary information and protectable trade secrets.

98. The confidential, proprietary, and trade secret information that Burer obtained during his employment relationship with Calloway was provided to and/or acquired by Burer under circumstances giving rise to a duty for him to maintain the confidential nature and limit the use of such information. Calloway took actual and reasonable steps to keep that information secret and confidential.

99. Burer's and 1 Call Away's activities described above constitute actual, threatened, and/or inevitable misappropriation of Calloway's confidential, trade secret, and proprietary information, without Calloway's consent, to Calloway's detriment, and for Defendants' commercial advantage, in violation of the Ohio Uniform Trade Secrets Act (O.R.C. § 1333.61, *et seq.*) and the common law of Ohio.

100. Unless a preliminary injunction is issued and Defendants are preliminarily and permanently enjoined from misappropriating Calloway's confidential, proprietary, and trade secret information, Calloway will suffer immediate and irreparable injury, for which there is no adequate remedy at law.

101. If Defendants' actions are not enjoined, the value of the confidential, proprietary, and trade secret information Calloway has developed will decline, and Calloway's efforts to protect its confidential, proprietary, and trade secret information will be rendered useless.

102.    Defendants' activities described above are such that it is inevitable that they have disclosed or will disclose Calloway's confidential, proprietary, and trade secret information, to and for the benefit of Defendants—Calloway's competitors.

103.    Calloway has not given Defendants consent to use or disclose Calloway's confidential, proprietary, or trade secret information.

104.    Defendants' actual and threatened misappropriation of Calloway's confidential, proprietary, and trade secret information was willful and malicious, and done with the intent to injure Calloway and Calloway's business.

### COUNT TEN: MISAPPROPRIATION OF CONFIDENTIAL, TRADE SECRET, AND PROPRIETARY INFORMATION – O.R.C. § 1333.61, et. seq. and 18 U.S.C. § 1836, et seq. (DAMAGES)
### (Asserted against All Defendants)

105.    Calloway restates and realleges all preceding paragraphs of this Complaint.

106.    Chapter 1333.63 of the Ohio Revised Code and 18 U.S.C. § 1836(b)(3) provide monetary damages and other relief when a defendant engages in misappropriation.  O.R.C. § 1333.63; 18 U.S.C. § 1836(b)(3)(B)(i)-(ii); 18 U.S.C. § 1836(b)(3)(C).

107.    Information that Burer obtained during his employment relationship with Calloway—which includes, but is not limited to, Calloway's customer database, pricing structure, and financial information that it used to quote projects to customers and to target actual repeat and potential customers—constitutes confidential and proprietary information and protectable trade secrets.

108.    The confidential, proprietary, and trade secret information that Burer obtained during his employment relationship with Calloway was provided to and/or acquired by Burer under circumstances giving rise to a duty for him to maintain the confidential nature and limit the use of

such information. Calloway took actual and reasonable steps to keep that information secret and confidential.

109. Burer's and 1 Call Away's activities described above constitute actual, threatened, and/or inevitable misappropriation of Calloway's confidential, trade secret, and proprietary information, without Calloway's consent, to Calloway's detriment, and for Defendants' commercial advantage, in violation of the Ohio Uniform Trade Secrets Act (O.R.C. § 1333.61, *et seq.*) and the common law of Ohio.

110. Defendants' activities described above are such that it is inevitable that they have disclosed or will disclose Calloway's confidential, proprietary, and trade secret information, to and for the benefit of Defendants—Calloway's competitors.

111. Calloway has not given Defendants consent to use or disclose Calloway's confidential, proprietary, or trade secret information.

112. Defendants' actual and threatened misappropriation of Calloway's confidential, proprietary, and trade secret information was willful and malicious, and done with the intent to injure Calloway and Calloway's business.

113. As a direct and proximate result of Defendants' misappropriation, Calloway has suffered and will suffer past and future damages in an amount to be determined at trial.

## COUNT ELEVEN: CIVIL CONSPIRACY (DAMAGES)
### (Asserted against All Defendants)

114. Calloway restates and realleges all preceding paragraphs of this Complaint.

115. Burer acted with malice in concert with 1 Call Away, via a civil conspiracy, to cause injury to Calloway.

116. Specifically, Burer conspired with 1 Call Away to (i) redirect and answer Calloway's actual and potential customers' phone calls and claim Burer was still associated with

Calloway; (ii) steal equipment from Calloway and use the stolen equipment to complete Calloway's booked and work in progress jobs for customers who called Calloway and believed they were still contracting with Calloway; (iii) misappropriate Calloway's registered design and word trademark "Help is just a call-o-way"; (iv) misappropriate images and videos featuring Calloway's employees and Calloway's work for 1 Call Away's website; (v) misappropriate Calloway's customer lists and other confidential and proprietary information and Calloway trade secrets; and (vi) repeatedly and falsely disparage Calloway and its work to Calloway's actual and potential customers.

117.    Burer and 1 Call Away carried out this conspiracy through repeated, unlawful acts that are independent from their entrance into the conspiracy.

118.    As a direct and proximate result of the actions of the parties to the conspiracy, Calloway has suffered and will suffer past and future damages in an amount to be determined at trial.

119.    Each Defendant is jointly and severally liable for their actions and wrongdoing of each co-conspirator because of their respective participation in the conspiracy.

120.    Calloway is also entitled to punitive damages since Defendants' wrongful and unlawful acts were made with malice or wanton disregard of the legal rights of others.

## COUNT TWELVE: EQUITABLE ACCOUNTING FOR DIVERTED SALES AND IMPROPER PROFITS RECEIVED
### (Asserted against All Defendants)

121.    Calloway restates and realleges all preceding paragraphs of this Complaint.

122.    Burer and 1 Call Away have failed to provide Calloway with credit for sales and work that Burer diverted from Calloway both during and after he tampered with Calloway's phone lines so that all customer calls to Calloway went, instead, directly to Burer; work that Burer and 1

Call Away performed with equipment stolen from Calloway; and work that Burer and 1 Call Away obtained because of their false association with Calloway.

123.    Calloway therefore seeks an accounting from Defendants of all sales they have made and payments they have received from August 15 – September 15, 2021 as well as all sales they have made and payments they have received since September 15, 2021 for work performed either using Calloway's equipment and/or obtained because of Defendants' false association with Calloway.

124.    Defendants' conduct, as described above, shows that Calloway has no adequate remedy at law for the equitable remedy of an accounting sought here.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Calloway respectfully requests that this Court issue a judgment as follows:

a)    On Counts One and Three, award an injunction prohibiting Defendants from: claiming any association with Calloway or in any way holding themselves out as being affiliated with Calloway; using equipment stolen from Calloway to compete against Calloway; trading on Calloway's name, reputation, and "Help is just a call-o-way" registered design and word trademark through the name "1 Call Away"; and using and misappropriating images and videos featuring Calloway's employees and Calloway's work for any other purposes, including 1 Call Away's website; as well as attorney's fees and costs under O.R.C. § 4165.03, 15 U.S.C. § 1125, and any other applicable law; and

b) On Counts Two and Four, award damages in favor of Calloway and against Burer and 1 Call Away, jointly and severally, in an amount to be determined at trial, plus exemplary damages, punitive damages, attorney's fees and costs, and pre- and post-judgment interest under O.R.C. § 4165.03, 15 U.S.C. § 1125, and any other applicable law; and

c) On Count Five, award damages in favor of Calloway and against Burer and 1 Call Away, jointly and severally, in an amount to be determined at trial, plus exemplary damages, punitive damages, attorney's fees and costs, and pre- and post-judgment interest; and

d) On Count Six, award damages in favor of Calloway and against Burer and 1 Call Away, jointly and severally, in an amount to be determined at trial in excess of $57,899, plus exemplary damages, punitive damages, attorney's fees and costs, and pre- and post-judgment interest; and

e) On Count Seven, award damages in favor of Calloway and against Burer and 1 Call Away, jointly and severally, in an amount to be determined at trial, plus exemplary damages, punitive damages, attorney's fees and costs, and pre- and post-judgment interest; and

f) On Count Eight, require Burer to disgorge to Calloway all revenues and compensation that he was paid by Calloway during his period of disloyalty; and

g) On Count Nine, award an injunction prohibiting Defendants from: (i) misappropriating images and videos featuring Calloway's employees and Calloway's work for 1 Call Away's website; and (ii) misappropriating Calloway's

customer lists and other confidential and proprietary information and Calloway trade secrets; and

h) On Count Ten, award damages in favor of Calloway and against Burer and 1 Call Away, jointly and severally, in an amount to be determined at trial, plus exemplary damages, punitive damages, attorney's fees and costs, and pre- and post-judgment interest; and

i) On Counts Eleven and Twelve, require Burer and 1 Call Away, jointly and severally, to account for and pay to Calloway all profits, gains, and advantages derived by Burer and 1 Call Away and/or all damages incurred by Calloway as a consequence of Defendants' misconduct and/or as a consequence of Defendants' misappropriation of Calloway's confidential, proprietary, or trade secret information; and

j) Award to Calloway treble, punitive, exemplary, and other damages under Ohio's Uniform Trade Secrets Act, the federal Defend Trade Secrets Act, the Ohio Deceptive Trade Practices Act, and the federal Lanham Act due to Defendants' willful and malicious misappropriation of Calloway's intellectual property; Calloway's confidential, proprietary, and trade secret information; and other misconduct; and

k) Award to Calloway its costs and attorneys' fees pursuant to Ohio and federal statutes as a result of Defendants' wanton, willful, and malicious misconduct in order to deter such action in the future; and

l) Award to Calloway prejudgment and post-judgment interest; and

m) Award to Calloway all such other relief as the Court may deem just and proper.

26

Respectfully Submitted,

*/s/ Aaron M. Bernay*
Aaron M. Bernay (0086495)
Simon Y. Svirnovskiy (0097096)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Phone: (513) 651-6800
Facsimile: (513) 651-6981
abernay@fbtlaw.com
ssvirnovskiy@fbtlaw.com

**Trial Attorneys for Plaintiff**

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all matters to which it is entitled.

*/s/ Aaron M. Bernay*
Aaron M. Bernay (0086495)

## VERIFICATION OF COMPLAINT

STATE OF OHIO                    )

COUNTY OF HAMILTON               )

I, _Michele Calloway_, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein in accordance with the Federal Rules of Civil Procedure. To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Plaintiff to state that Plaintiff is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

_____

Subscribed and sworn by _Michele Calloway_ before me, a Notary Public, on this ⁷th day of January, 2022.

_____
Notary Public

EN01153.Public-01153   4892-4627-3542v.1